HOSKINS, APPELLANT, *v.* WHITE ET AL., RESPONDENTS.

[Argued, June 24, 1892. Decided January 30, 1893.]

PARTIES — *Attachment bond.* — In an action upon an attachment bond, which was signed only by the sureties, the plaintiffs in the attachment suit are parties having an interest in the controversy adverse to the plaintiff, and therefore may be properly joined with the sureties as parties defendant. (*McIntosh* v. *Hurst*, 6 Mont. 287; *Pierse* v. *Miles*, 5 Mont. 549, cited.)

INFANCY OF PLAINTIFF — *Appointment of guardian — Amendment.* — Where it is disclosed by proof upon the trial of a cause that the plaintiff is a minor and the complaint is then amended to show the minority and emancipation of plaintiff, it is error for the court to sustain a demurrer to the complaint on the ground of want of legal capacity to sue, but the court, upon the suggestion of plaintiff's minority, should clothe him with capacity to sue by the appointment of a guardian, and allow amendment of his complaint by inserting the name of such guardian.

SAME — *Emancipation of infant.* — The emancipation of a minor by his parents does not clothe him with capacity to sue in his own name without the appointment of a guardian.

*Appeal from Sixth Judicial District, Park County.*

Action for wrongful attachment. Judgment was rendered for defendants below by HENRY, J. Reversed.

*E. P. Cadwell,* for Appellant.

White and Platt were proper parties defendant (Code Civ. Proc. § 182; Hawe's Parties to Actions, § 97; 2 Mont. 429; *McIntosh* v. *Hurst*, 6 Mont. 287; *Pierse* v. *Niles*, 5 Mont. 549),

although the form of plaintiff's action should have been by a guardian or his next friend, he did not so sue the defendants, neither was he so sued by the defendants, White and Platt, hence they must be deemed to have joined issue on his complaint and thus waived the form of the action. (Waite's Actions and Defenses, p. 75; *Boobier* v. *Boobier,* 39 Me. 406; *Davies* v. *Turton,* 13 Wis. 185; *Drago* v. *Moso,* 1 Spear, 212; 40 Am. Dec. 592; *Moke* v. *Fellman,* 17 Tex. 367; 67 Am. Dec. 656; *Person* v. *Chase,* 37 Vt. 647; 88 Am. Dec. 630; *Taunton* v. *Plymouth,* 15 Mass. 203; *Vent* v. *Osgood,* 19 Pick. 572; *Sweet* v. *Tuttle,* 14 N. Y. 465; *Fellows* v. *Niver,* 18 Wend. 563; *Schemerhorn* v. *Jenkins,* 7 Johns. 373; *Palmer* v. *Davis,* 28 N. Y. 242; *Morrell* v. *Morgan,* 65 Cal. 575; *Wedel* v. *Herman,* 59 Cal. 507; *Mills* v. *Bland,* 76 Ill. 381; 1 Chitty on Pleading, p. 436.) The defendants White and Platt must be barred from now insisting on that which has at all times been waived, from being so inconsistent with their former position as to insist on that which, if insisted on before, would have invalidated their own procedure. (Bigelow on Estoppel, 567, 568, 601, 604; *Bates* v. *Ball,* 72 Ill. 108; Herman on Estoppel, §§ 816–20, 449.)

*Word, Smith, & Word,* for Respondents.

HARWOOD, J.—Plaintiff brought this action to recover damages for the alleged wrongful attachment of his goods in a former suit prosecuted against him by respondents, F. A. White and J. L. Platt, Jr. To obtain the attachment in the former suit, White and Platt procured and filed the undertaking required by statute, executed by D. O'Shea and William O'Connor, as sureties, but such undertaking was not signed by the attaching creditors, White and Platt. In that suit it appears Hoskins prevailed, and the attachment on his goods was dissolved. Now he prosecutes this action against White and Platt, and their sureties, O'Shea and O'Connor, all joined as defendants herein, to recover damages for said wrongful attachment.

The first question presented on this appeal is whether the district court erred in sustaining the demurrer interposed by defendants White and Platt, on the ground that they were

improperly joined with O'Shea and O'Connor as defendants in this action. The tendency of the Montana decisions appears to be to the effect that the sureties in such an undertaking, and the principal on whose behalf it was executed, may be proceeded against in the same action for the damage sustained. (*McIntosh* v. *Hurst*, 6 Mont. 287; *Pierse* v. *Miles*, 5 Mont. 549. See, also, *Jennings* v. *Jonier*, 1 Cold. 645.) It ought to be so held on principle. The subject of the action is the damage committed by the wrongful attachment. The principal and sureties are all liable for one and the same thing, to the amount for which the undertaking provides. (*Wibaux* v. *Grinnell Live Stock Co.*, 9 Mont. 154.) If A, in writing, guarantees that B will pay his own grocery bill, would it be contended that A and B could not be sued together in the same action for that debt? Although B did not sign the guaranty to pay his own debt, both are liable for the bill—one as primary debtor, and the other as surety or guarantor. Here, in the action at bar, White and Platt and O'Shea and O'Connor are all liable for one and the same damage, committed by the wrongful attachment—White and Platt primarily, and O'Shea and O'Connor as sureties. The latter have guaranteed, as evidenced by the written undertaking, that White and Platt will pay such damages.

In *Pinney* v. *Hershfield*, 1 Mont. 367 (an action to recover damages for wrongful attachment), it was held that "a demand on the principal debtor, and a failure on his part to do that which he is bound to do, are requisite to found any claim against the guarantor. (2 Parsons on Contracts, 29.)" In the case at bar the condition of the undertaking is that the undersigned sureties, "in consideration of the premises and of the issuing of said attachment, do jointly and severally undertake, in the sum of twelve hundred and seventy dollars, and promise, to the effect that if the defendant recover judgment in said action, or if the attachment be dismissed, the plaintiff will pay all costs that may be awarded to the said defendant, and all damages he may sustain by reason of the attachment." Section 16 of the Code of Civil Procedure provides that "any person may be made defendant who has or claims an interest in the controversy adverse to the plaintiff." Is not the principal who caused the attachment, and whom the sureties guaranteed would

pay the damage, a party in interest, adverse to the plaintiff? He is bound to reimburse the sureties for whatever they are compelled to pay on his behalf in the premises. The statute provides that where "one or more of the defendants against whom the judgment is to be rendered are principal debtors, and others of the said defendants are sureties of such principal debtor or debtors, the court may order the judgment so to state; and, upon the issuance of an execution upon such judgment, it shall direct the sheriff to make the amount due thereon out of the goods and chattels, lands and tenements, of the principal debtor or debtors, or, if sufficient thereof cannot be found within his county to satisfy the same, then that he levy and make the same out of the property, personal or real, of the judgment debtor who was surety." (Comp. Stats., div. 5, § 1293.)

Respondents' counsel contend that there can be no implied parties to the obligation sued on. True enough, but the obligation sued on should not be confounded with the evidence by which defendants became parties to that obligation. The obligation, resting upon all these defendants alike, is to compensate for the damage resulting from said wrongful attachment. That damage is the cause of action. The obligation to answer therefor rests upon several parties. White and Platt are primarily bound therefor, because of the obligation imposed by law to answer for a damage directly caused by their unlawful act in suing out the attachment. They are the principal parties, charged therewith by operation of law, because they are the direct authors of the damaging act. But the law, to make sure provision that the damage wrought by the misuse of its process will be compensated, requires that others shall take upon themselves the same obligation, namely, to answer for the damage caused by the wrongful procurement and use of the attachment writ. O'Shea and O'Connor, by their written engagement, took upon themselves the same obligation, and upon this evidence the law lays upon them a judgment for said damage, of course not exceeding the amount of their undertaking; and, if judgment was sought against the sureties for any greater amount than their undertaking, it would be limited thereto. It is eminently proper that all parties bound for this damage

should be proceeded against in the same action (*Jennings* v. *Jonier*, 1 Cold. 645), if they can be found and served with summons, because plaintiff has a right to judgment against them without prosecuting two actions, although plaintiff, at his option, may proceed against all or part of those liable to answer for the same obligation (Code Civ. Proc., § 20; Comp. Stats., div. 5, § 1296); and to deny plaintiff's right to have such judgment as he may recover entered against White and Platt, as well as O'Shea and O'Connor, in this action, by sustaining the demurrer on behalf of White and Platt, on the alleged ground of misjoinder, was error.

The second proposition to be considered arose in this wise: After demurrer on behalf of White and Platt was sustained, the action was proceeded with against said sureties O'Shea and O'Connor. It appears that upon the trial the evidence disclosed the fact that the plaintiff was a minor, then of the age of nineteen years. Thereupon evidence was also introduced to show "that plaintiff was emancipated, and given his time, by his father and mother, in the month of March, 1889, and was released by them from any responsibility to them as their son, by reason of his being under the age of twenty-one years;" that during all times stated in the complaint, "and at the present time, plaintiff was acting and doing business as a man of the age of twenty-one years; that neither of his parents have or claim any right, title, or interest in his property or his earnings, as his parents, since, or at any time since, the month of March, 1889." At the close of the introduction of evidence on behalf of plaintiff, he asked leave of court to amend his complaint "to conform to the evidence introduced;" and, having obtained such leave, filed his complaint as amended, setting forth the facts above stated in relation to his minority and alleged emancipation by his parents. Defendants O'Shea and O'Connor thereupon interposed a demurrer to said last amended complaint, on the ground "that it appears upon the face of said amended complaint that plaintiff has no legal capacity to sue or maintain this action." This demurrer was sustained by the court, and that order is assigned as error. The principles involved herein were elaborately discussed by De Wolfe, J., and the same conclusions reached in *Wibaux* v. *Grinnell Live Stock Co.*, 9 Mont. 154.

Where an amendment is properly allowed to cover some variance, and make the allegations conform to the proof, as contemplated in sections 112 and 113 of the Code of Civil Procedure, we do not think it would be subject to demurrer. The amendment as to the minority and the emancipation of plaintiff, however, had no reference to matter originally introduced in the case by any allegations, so there was no variance "between the allegations in the pleadings and the proofs" to be cured by such an amendment. But the feature disclosed by the proof on which the amendment was introduced related to plaintiff's capacity to prosecute his action alone. The only question in relation to that point is whether the court ruled correctly in entertaining and sustaining a demurrer on the disclosure by the proof that plaintiff was a minor, in court with an action, without a guardian, and the insertion of that fact in the complaint by amendment. Where nonsuit has been granted on such disclosure, it has been held error on appeal, and that it is only ground for abatement. (*Drago* v. *Moso*, 1 Spear, 212; 40 Am. Dec. 592; *Moke* v. *Fellman*, 17 Tex. 367; 67 Am. Dec. 656; *Schemerhorn* v. *Jenkins*, 7 Johns. 373; *Young* v. *Young*, 3 N. H. 345; *Blood* v. *Harrington*, 8 Pick. 552; 1 Chitty on Pleading, 464.) It is also directly held that an amendment is allowable by the insertion of the name of the guardian or *prochein ami*. (*Young* v. *Young*, 3 N. H. 345; *Blood* v. *Harrington*, 8 Pick. 552.)

The terms of our statute seem to contemplate that a minor may come into court with his action; and, it appearing that he is a minor, the court will, on suggestion of that fact, clothe him with capacity to prosecute his action by the appointment of a guardian, and allow amendment of his complaint by inserting the name of such guardian (Code Civ. Proc. §§ 9, 10, 116), and from the authorities *supra* this would appear to be the proper practice in such a case as this. The language of sections 9 and 10 of our Code of Civil Procedure is as follows: "When an infant is a party he shall appear by guardian, who may be appointed by the court in which the action was prosecuted, or by a judge thereof, or a probate judge." (Sec. 9.) "The guardian shall be appointed as follows: 1. When the infant is plaintiff, upon the application of the infant, if he be of the age of fourteen years, or, if under that age, upon the application of a relative or friend of the infant. 2. When the infant is de-

fendant, upon the application of the infant, if he be of the age of fourteen years, and apply within ten days after the service of the summons; if he be under the age of fourteen, or neglect so to apply, then upon application of any other party to the action, or of a relative or friend to the infant." (Sec. 10.)   Section 116 of the Code of Civil Procedure provides for amendment by inserting the name of a party.   (*Young* v. *Young*, 3 N. H. 345; *Blood* v. *Harrington*, 8 Pick. 552.)

While the question of emancipation would be a relevant inquiry if the controversy related to the right of plaintiff to property or earnings, as between himself and parents or others, we do not think emancipation by the parent would clothe the minor with capacity to sue, especially in view of our statute in that regard.   In *Person* v. *Chase*, 37 Vt. 647; 88 Am. Dec. 630, the court (per Kellogg, J.) said: "The emancipation of the infant by his father did not enlarge or affect his capacity to make a contract, and its only effect was to release him from his father's control, and to give him a right, as against his father, to his earnings.   (*Taunton* v. *Plymouth*, 15 Mass. 203; *Vent* v. *Osgood*, 19 Pick. 572.)"   The judgment must be reversed, and the cause remanded, with direction to overrule demurrers, and allow plaintiff to proceed according to the views herein set forth; and it will be so ordered.

*Reversed.*

PEMBERTON, C. J., and DE WITT, J., concur.